UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JANET K. LUCAS,　　　　　　　）
　　　　　　　　　　　　　　　）
　　　　　　　　Plaintiff,　　　）　　　Case No. 1:09-cv-920
　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　）　　　Honorable Paul L. Maloney
　　　　　　　　　　　　　　　）
COMMISSIONER OF　　　　　　　）
SOCIAL SECURITY,　　　　　　　）
　　　　　　　　　　　　　　　）　　　**REPORT AND RECOMMENDATION**
　　　　　　　　Defendant.　　　）
_____)

　　　　This is a social security action brought under 42 U.S.C. § 405(g) seeking review of

a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to

disability insurance benefits (DIB).  On June 8, 2004, plaintiff filed her application for DIB benefits

alleging a September 1, 2003 onset of disability.  (A.R. 72-75).  Her claim was denied on initial

review.  (A.R. 22, 50-54).  On April 9, 2007, she received a hearing before an administrative law

judge (ALJ), at which she was represented by counsel.  (A.R. 251-82).  On July 6, 2007, the ALJ

issued a decision finding that plaintiff was not disabled.  (A.R. 13-20).  On August 11, 2009, the

Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final

decision.

　　　　On October 6, 2009, plaintiff filed her complaint seeking judicial review of the

Commissioner's decision denying her claim for DIB benefits.  Plaintiff's brief contains the following

statement of errors:

1.    The [Commissioner] improperly disregarded the opinion of the plaintiff's treating physician and gave more weight to the opinion of a consultative evaluator who saw the plaintiff on one[] occasion.

2.    The [Commissioner] improperly discounted the plaintiff's credibility despite testimony from treating sources that her pain and functional limitations related thereto were consistent with the underlying objective diagnostic studies.

3.    The [Commissioner] may rely on vocational expert testimony only if the hypothetical questions accurately reflect the plaintiff's exertional limitations.  In the case at hand, the hypothetical questions posed to the Vocational Expert did not accurately reflect the totality of the plaintiff's functional limitations.

(Statement of Errors, Plf. Brief at 1, docket # 13).  Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.  I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see*

*McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

### Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of September 1, 2003, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after September 1, 2003. (A.R. 15). The ALJ found that plaintiff had the following severe impairments: "a back disorder and osteoarthritis." (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 16). The ALJ found that

plaintiff retained the residual functional capacity (RFC) for a limited range of light work. (A.R. 16).

The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms[,] but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.
>
> Although the claimant testified that Dr. Hamati, an orthopedist, has suggested that the claimant should have neck surgery, there is no indication in the medical records that the claimant has decided to go through with the surgery. On October 2, 2007, Dr. Hamati reported that although the claimant would benefit eventually from a cervical decompression and fusion, she should not rush into it (Exhibit 9F, page 1)[A.R. 223]. Moreover, her use of pain medications (primarily consisting of Vicodin) and her overall conservative care do not support her contentions of debilitating symptoms, including frequent headaches, incapacitating back and neck pain, and the need to lie down frequently during the day for pain relief. In addition, there is no documentation that the claimant has any significant side effects as a consequence of her medication usage.
>
> The claimant's daily activities further belie her allegations of overwhelming symptoms. The claimant testified that she typed out a children's book that was published in 2005. In addition to writing, she tends her flower and vegetable garden. Although she is not particularly active with the Eagles, she belongs to the Eagle's club. She likes to spend time with her family, takes outdoor walks, paints sometimes, reads at times, cooks once or twice daily, drives once or twice weekly, shops, and cares for her personal needs (Exhibit 11E)[A.R. 139-43].

(A.R. 17-18). The ALJ found that plaintiff was not disabled at step four of the sequential analysis

because she was capable of performing her past relevant work as a daycare worker, bartender, and

caterer.[1]  These jobs, as generally performed in the national economy, did not require the performance of work-related activities precluded by plaintiff's RFC.  (A.R. 19-20).

Alternatively, the ALJ found that plaintiff was not disabled at step five of the sequential analysis.  (A.R. 20).  Plaintiff was 56-years-old as of her alleged onset of disability and was classified as a person of advanced age.  20 C.F.R. § 404.1563(d).  Plaintiff has more than a high school education.  She has transferable job skills in business management, accounting, and customer service.  (A.R. 20, 275).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the vocational expert (VE) identified more than 26,500 jobs in the State of Michigan that the hypothetical person was capable of performing.  (A.R. 276-77).  The ALJ found that this constituted a significant number of jobs.  Using Rule 202.07 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.  (A.R. 20).

---

[1]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act."  *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."  *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

**1.**

Plaintiff argues that the ALJ "disregarded" the testimony of her treating physician, Yousif Hamati, M.D., and gave too much weight to the opinions of a consultative examiner, Donald Sheill, M.D. (Plf. Brief at 10-13). I disagree.

Dr. Hamati saw plaintiff on two occasions: May 25, 2004, and October 2, 2006. (A.R. 230). On February 19, 2007, plaintiff's attorney took Dr. Hamati's sworn statement (A.R. 227-33) and Dr. Hamati completed a "Medical Assessment of Ability to do Work-related Activities." (A.R. 237-39). Dr. Hamati acknowledged that Molly P. Crissman, M.D., was plaintiff's primary care physician. (A.R. 231-32). The ALJ did not "disregard" Dr. Hamati's opinions. He addressed them at length. The ALJ found that the opinions Dr. Hamati expressed on February 19, 2007, were entitled to little weight because they were based on faulty information regarding plaintiff's weight and were inconsistent with his own office notes and the medical findings of other physicians:

> The claimant saw Yousif I. Hamati, M.D., an orthopedic specialist on May 25, 2004 and October 2, 2006. In May 2004 Dr. Hamati concluded that the claimant should use anti-inflammatory medications and that she should avoid gripping, bending, stooping, twisting, and lifting (Exhibit 9F, page 3)[A.R. 225]. In his October 2, 2006 office note the orthopedist remarked that the claimant should not do any heavy bending, stooping twisting or lifting. He observed that the claimant had a negative neurological examination (Exhibit 9F, page 1)[A.R. 223]. In February 2007 Dr. Hamati offered the opinion that the claimant was extremely limited in performing even sedentary work functions (Exhibit 10F, pages 12 through 14)[A.R. 237-39].

> It appears that Dr. Hamati's opinion of February 2007 may be based on incorrect information. Dr. Hamati has commented that the claimant is obese at 250 pounds and that her obesity was a factor in restricting the claimant as he had. [A.R. 231]. At the hearing the claimant testified that she now weights 155 pounds and that three years ago she only weighed 125 pounds. [A.R. 266-67]. A consulting physician in January 2005 recorded the claimant's weight as 156 pounds (Exhibit 5F)[A.R. 164]. In addition, Dr. Hamati's comments are not consistent with the medical findings of plaintiff's treating doctor, Dr. Crissman, and the consulting physician. Dr. Crissman documented in September 2006 that the claimant's neck was supple without any apparent abnormalities (Exhibit 11F, page 1)[A.R. 240]. As

mentioned previously, the consulting physician recorded that the claimant had a full range of neck motion (Exhibit 5F)[A.R. 163-68]. Even in October 2006 Dr. Hamati determined that the claimant had no neurological abnormalities (Exhibit 9F, page 1)[A.R. 223]. Inasmuch as Dr. Hamati's limitations of February 2007 are based on faulty information and his conclusions are not consistent with his own office notes and the medical findings of other physicians of record, the undersigned does not give controlling weight to Dr. Hamati's February 2007 opinion. Rather, the orthopedist's opinion in his office note dated October 2, 2006, that the claimant is unable to do heavy bending, stooping, twisting or lifting [A.R. 223] is a more accurate description of the claimant's physical functioning.

(A.R. 18).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Dr. Hamati's opinion that plaintiff was disabled was not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment, because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598.

"Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d at 390. A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than

another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of her symptoms is not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d at 651; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

The above-quoted findings made by the ALJ were appropriate and well-supported. The ALJ indulgently treated Dr. Hamati's opinions as those of a treating physician. If the ALJ had declined to treat Dr. Hamati's opinions as those of a treating physician it would not have been error, given his relatively insubstantial contacts with plaintiff. "The treating physician doctrine is based on an assumption that a medical professional who has dealt with the claimant and [her] maladies over a long period of time will have deeper insight into the medical condition of the claimant than a person who has examined the claimant but once . . . ." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). A physician who sees a patient for only two or three visits "often" lacks a sufficient ongoing treatment relationship to be considered a treating physician. *See Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006); *see also* 20 C.F.R. §§ 404.1502, .1527(d)(2). Dr. Hamati saw plaintiff on two occasions and the only "treatment" he provided was giving plaintiff a "traction unit" during her last visit on October 2, 2006. (A.R. 223). A physician familiar with his patient would not have overstated her weight by a hundred pounds. I find no violation of the treating physician rule. The ALJ's decision is supported by more than substantial evidence, and the ALJ gave appropriate weight to Dr. Hamati's opinions. Furthermore, the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Hamati's opinions.


**2.**

Plaintiff argues that the ALJ "improperly discounted" her credibility. (Plf. Brief at 3). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of*

*Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ evaluated plaintiff's testimony in light of the other evidence of record. It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary*

*of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find that the ALJ's credibility determination is supported by more than substantial evidence.

**3.**

Plaintiff's argument attacking the adequacy of the ALJ's hypothetical question (Plf. Brief at 13-15) does not provide a basis for disturbing the Commissioner's decision. The ALJ's finding at step four of the sequential analysis did not rely on the VE's response to a hypothetical question. The ALJ found that plaintiff was not disabled because she was capable of performing her past relevant work as a daycare worker, bartender, and caterer as those occupations are generally performed in the national economy. (A.R. 19-20).

It was plaintiff's burden at step four of the sequential analysis to prove that she was unable to perform (1) the functional demands and duties of past relevant jobs as she actually performed them, and (2) that she was unable to perform the functional demands and job duties of her occupations as generally required by employers throughout the national economy. *See Garcia v. Secretary of Health & Human Servs.*, 46 F.3d 552, 556 (6th Cir. 1995); *see also Delgado v. Commissioner*, 30 F. App'x 542, 548 (6th Cir. 2002) ("At the fourth step of the sequential evaluation process, [the claimant] must prove that she is unable to perform her past relevant work and that she is unable to return to her former type of work as generally performed."). It is clear that a claimant "must prove an inability to return to h[er] former type of work and not just to h[er] former job." *Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *see also Titles II and XVI: The Particular Job or the Occupation as Generally Performed*, SSR 82-61 (reprinted in 1982 WL 31387, at * 2 (SSA 1982)). The VE testified that the daycare worker,

bartender, and caterer occupations, as generally performed in the national economy, are light in their exertional requirements.[2]  Further, these jobs did not involve climbing ladders, ropes, or scaffolds and did not require concentrated exposure to vibration and workplace hazards such as moving machinery and unprotected heights.  The jobs required no more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling.  (A.R. 274, 276).  Plaintiff offered no contrary evidence.  The VE's testimony regarding the functional demands of plaintiff's past relevant work provides more than substantial evidence supporting the ALJ's decision.

The ALJ made an alternative holding that plaintiff was not disabled at step five of the sequential analysis.  The alternative holding did rely on the VE's response to a hypothetical question.  Plaintiff's argument that the hypothetical question was deficient because it "did not incorporate the plaintiff's testimony regarding the need to l[ie] down for symptom relief" and functional limitations described by Dr. Hamati (Plf. Brief at 14) is a repackaging of the arguments previously addressed herein.  A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision.  *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations.  *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004).  The ALJ rejected the restrictions that Dr. Hamati proffered on February 19, 2007, because they were not well supported by objective evidence, were inconsistent with Dr. Hamati's own treatment notes, and were inconsistent with the opinions of other treating and examining physicians.  The ALJ found that

---

[2] Vocational expert testimony is not required at step 4 of the sequential analysis.  *See Cruse v. Commissioner*, 502 F.3d 532, 545 (6th Cir. 2007); 20 C.F.R. § 404.1560(b)(2).

plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Grant v. Commissioner*, No. 09-5623, 2010 WL 1378427, at * 3 (6th Cir. Apr. 7, 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.").

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   July 6, 2010               /s/  Joseph G. Scoville
                                    United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).